IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMARA COLON, individually and on behalf of all others similarly situated, </br></br>Plaintiff, </br></br>v. </br></br>DYNACAST, LLC, </br></br>Defendant. | Case No. 19-cv-4561 </br></br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Dynacast's motion to dismiss [8] and Plaintiff Tamara Colon's motion to remand [15] this case to the Circuit Court of Cook County, Illinois, pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. For the reasons stated below, Plaintiff's motion to remand [15] is granted, and Defendant's motion to dismiss [8] is denied as moot. Plaintiff's request for attorneys' fees, however, is denied. Civil case terminated.

**I.      Background**

Plaintiff Tamara Colon filed this putative class action complaint against her former employer, Defendant Dynacast. [1-1, ¶¶ 1–2.] Defendant used so-called biometric data to provide authentication for its time-card system. [*Id.*, ¶ 11.] First, upon the commencement of employment, Defendant would collect each employee's "fingerprint and/or handprint." [*Id.*] Defendant then stored this biometric data and used it to authenticate timecard entries. See [*id.*]. Every time an employee clocked in or out, he or she would have to scan his or her finger or handprint; Defendant's computer systems would then compare the instant biometric information against the stored record. See [*id.*]. Thus, Plaintiff alleges that "each day" of her employment (from 2013 until January 2018), she was "required to place her hand on a panel to be scanned in order to 'clock

in' and 'clock out' of work." [*Id.*, ¶¶ 9, 13.] At least 200 of Defendant's employees were required to use this biometric time-keeping system.[1] [*Id.*, ¶¶ 4, 22, 24.] Defendant did not "publicly provide a retention schedule or guideline for permanently destroying biometric identifiers"; "inform Plaintiff * * * in writing that [her] biometric identifiers and/or biometric information were being collected and stored"; "inform Plaintiff * * * in writing of the specific purpose and length of term for which [her] biometric" information was collected, stored, and used; or "obtain written releases from Plaintiff * * * before it collected, used, and/or stored" her fingerprint data. [*Id.*, ¶¶ 41–44.]

Plaintiff filed this lawsuit in the Circuit Court of Cook County, asserting various theories under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). [*Id.*, ¶¶ 1, 28–44.] Defendant removed the case to federal court [1], and soon thereafter filed a motion to dismiss for failure to state a claim [8] pursuant to Rule 12(b)(6). Plaintiff responded by filing a motion to remand for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c). See generally [15]. Plaintiff argues that she lacks Article III standing and that she also fails to meet the statutory amount-in-controversy requirements for either individual or class actions. See generally [*id.*]. Defendant retorts that Plaintiff's injury is sufficiently concrete to confer Article III standing; that the individual amount in controversy is greater than $75,000; and that the class-action amount in controversy is well-over $5,000,000. See generally [17].[2]

---

[1] Defendants assert that more than 300 employees used "the time clocks at issue during the period" of Plaintiff's employment during which biometrics were used. [17-1, ¶4.] For the reasons discussed below, the Court need not determine which of these numbers to use.

[2] As explained below, the Court determines that Plaintiff has not suffered a concrete injury, and therefore lacks Article III standing in this case. Because the Court lacks jurisdiction, it need not determine whether the amount in controversy meets the individual or class-action requirements of 28 U.S.C. § 1332(a) or (d)(2), respectively.

## II. Legal Standard

"Subject-matter jurisdiction is the first issue in any case." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c); see also *Collier v. SP Plus Corporation*, 889 F.3d 894, 895 (7th Cir. 2018) (per curium) (explaining that remand is required when jurisdiction is lacking). Article III standing is a necessary component of federal subject matter jurisdiction. *E.g. Collier*, 889 F.3d at 896. "[T]he party seeking removal * * * bears the burden of establishing federal jurisdiction." *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352 (7th Cir. 2017). Thus, in removal cases such as this, the *Defendant* bears the burden of showing that the *Plaintiff* had Article III standing at the time of removal. *Miller v. Southwest Airlines Co.*, 2018 WL 4030590, *3 (N.D. Ill. August 23, 2018) aff'd 926 F.3d 898 (7th Cir. 2019); see also *Collier*, 889 F.3d at 896. Finally, "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

The Seventh Circuit uses the *Twombly-Iqbal* "plausibility" standard when assessing whether a party has adequately pled subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). That is, plaintiffs must "plead sufficient factual allegations, that plausibly suggest each of the elements of Article III standing." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quotation marks and citation omitted). "Legal conclusions or bare and conclusory allegations, however, are insufficient" to support Article III standing. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009); see also *Collier*, 889 F.3d at 896 (remanding for lack of Article III standing when complaint contained only one conclusory statement regarding actual damages).

### III. Analysis

#### A. Standing

The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "The 'irreducible constitutional minimum of standing' consists of three elements: injury in fact, causation, and redressability." *Groshek*, 865 F.3d at 886 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to confer Article III standing, "it must be both concrete *and* particularized." *Spokeo*, 136 S. Ct. at 1548 (string-cite omitted). The instant case concerns whether the alleged violations of BIPA caused Plaintiff a sufficiently concrete injury to confer Article III standing. Ironically, Plaintiff claims that her injuries were not concrete, whereas Defendant argues in favor of concreteness.

Concreteness is not a synonym for tangible. That is, intangible or otherwise difficult-to-quantify injuries can confer Article III standing. *Id.* at 1549 (citations omitted). While "Congress is well positioned to identify intangible harms" that can constitute injury in fact, that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. "[A] bare procedural violation, divorced from any concrete harm," is insufficient to confer Article III standing. *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing") (alterations in original)). In other words, the proponent of federal jurisdiction "must show that the statutory violation presented an

4

appreciable risk of harm to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek*, 865 F.3d at 887 (quotation marks and citations omitted).[3]

BIPA defines "biometric information" as any information "based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10. Biometric identifiers include fingerprints and hand-scans. 740 ILCS 14/10. The Illinois legislature explained in its legislative findings that there are benefits to using biometric information including "streamlined financial transaction and security screenings." 740 ILCS 14/5(a). Unlike Social Security numbers and other secure identifiers, however, biometric data cannot be changed if compromised. 740 ILCS 14/5(c). Thus, if biometric data are compromised, a victim may be "at heightened risk for identify theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5(c). As such, some members of the public are reluctant to share biometric data or enter into transactions where such data are required. 740 ILCS 14/5(d) & (e). "These findings demonstrate that the core interest the legislature sought to protect is the privacy of biometric information." *Aguilar v. Rexnord LLC*, 2018 WL 3239715, *3 (N.D. Ill. July 3, 2018) (collecting cases).

Accordingly, the state crafted various regulations regarding the use of biometric data and provided a cause of action for those "aggrieved by a violation of" BIPA. 740 ILCS 14/15 & 20. At issue here are requirements that:

> (a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information * * *.

---

[3] Although most cases discuss Congress's intent (as opposed to that of a state legislature), the Court agrees that "there is no good reason why the judgment of a state legislature should be treated as less important than that of Congress in deciding when the violation of a statutory grant in itself amounts to a real and concrete injury." *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953 (N.D. Cal. 2018) (considering Illinois legislature's findings in determining concrete interest motivating BIPA's enactment); see also *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (explaining that the violation of certain state statutes confers Article III standing).

5

>(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
>
>>(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
>>(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
>>(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(a) & (b). The BIPA also forbids profiting from another's biometric data, disclosing or disseminating another's biometric data without consent, and failing to secure biometric data. 740 ILCS 14/15(c)–(e). The legislature specified liquidated damages for each violation—to the tune of $1,000 for negligence or $5,000 for recklessness—along with attorneys' fees and equitable remedies. 740 ILCS 14/20.

Courts in this district have repeatedly been asked to parse whether the statutory sections at issue in this litigation—those requiring written materials and signed consent—protect the concrete interest in a right to privacy, the violation of which would give rise to Article III standing. The consensus is that "[c]onstitutional standing is generally conferred in BIPA actions where biometric information is collected without the plaintiff's knowledge or disseminated to a third party without consent." *Rogers v. CSX Intermodal Terminals, Inc.*, 2019 WL 4201570, *2 n.3 (N.D. Ill. Sept. 5, 2019) (citations omitted); accord *McGinnis v. United States Cold Storage, Inc.*, 382 F. Supp. 3d 813, 819 (N.D. Ill. 2019) ("All other courts in this District that have considered whether a person suffers a concrete injury from the *known* collection and retention of a fingerprint, *without disclosure* to a third-party, have answered the question no.") (citations omitted); see also *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 335–36 (7th Cir. 2019) (affirming dismissal for

want of jurisdiction when alleged Fair Debt Collection Practices Act violation was failure to convey information in writing, and lack of information did not harm plaintiff); *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016) (dismissing Fair and Accurate Credit Transactions Act suit for want of jurisdiction when "nobody else ever saw the" sensitive financial information defendant inadvertently printed).

Indeed, this case is virtually identical to several other BIPA cases that courts in this district have remanded or dismissed for lack of jurisdiction when employees knowingly provided biometric data to their employers; the employers did not disclose said data to third parties; and the employees sued on the sole basis of their respective employers' failure to provide *written* notice or obtain signed consent. See *McGinnis*, 382 F. Supp. 3d at 818–20 (holding that employee did not have standing when employee knowingly gave biometric fingerprint data and employer did not distribute biometric data); *Aguilar*, 2018 WL 3239715 at *3–4 (N.D. Ill. July 3, 2018) (same); *Goings v. UGN, Inc.*, 2018 WL 2966970, *3–4 (N.D. Ill. June 13, 2018) (same); *Howe v. Speedway LLC*, 2018 WL 2445541, *5–6 (N.D. Ill. May 31, 2018) (same); see also *McCollough v. Smarte Carte, Inc.*, 2016 WL 4077108, *4–5 (N.D. Ill. Aug. 1, 2016) (holding that plaintiff did not have standing when she voluntarily and knowingly used her fingerprint as the key to a storage locker); *Santana v. Take-Two Interactive Software*, Inc., 717 Fed. Appx. 12, 15–17 (2d Cir. 2017) (summary order) (affirming dismissal for lack of standing when plaintiff voluntarily submitted to a 15-minute face scan to create a video-game avatar likeness). In each of these cases, any reasonable person would have known that the respective defendants were collecting, storing, and using biometric data. See, *e.g.*, *Howe*, 2018 WL 2445541 at *6. The fact that this was not explained *in writing* does nothing to harm people's privacy interests, because they knew that the data was being collected and did not allege that their data was shared with third parties.

7

So too here: Defendant obviously collected Plaintiff's fingerprint when the fingerprint was taken. No one alleges that Defendant snooped around like Nicholas Cage in *National Treasure*, surreptitiously gathering Plaintiff's biometric data off discarded goods. Likewise, Defendant obviously stored the prints—otherwise the entire authentication system would make no sense. See *Aguilar*, 2018 WL 3239715 at *3; *Howe*, 2018 WL 2445541 at *6. Defendant had to compare each print taken at the timecard station to a baseline in order to determine if the employee clocking in or out was in fact who they said they were. Because Plaintiff knew that her data was being collected, Defendant's failure to go through each procedural formality outlined in BIPA did not present any "appreciable risk of harm to the underlying concrete interest" in privacy, and therefore Plaintiff has not suffered any injury in fact. See *Groshek*, 865 F.3d at 887 (quotation marks omitted). Similarly, because Plaintiff has not alleged that her data was given to third-parties, her right to privacy in her biometric data was not compromised.

In a similar vein, this case is distinguishable from those in which courts have found standing for BIPA violations—all of them found the initial provision of biometric data or the dissemination thereof to be unwitting or otherwise nonconsensual.[4] *Rogers*, 2019 WL 4201570 at

---

[4] The Seventh Circuit recently considered a similar case and held that the plaintiffs had suffered an injury giving them standing—but on alternate grounds. *Miller*, 926 F.3d at 902. There, airline workers sued for violations of BIPA because they were made to use fingerprints while clocking in and out and were not given proper written notice. *Id.* at 901. But these unionized airline workers are subject to the Railway Labor Act, which triggers bargaining or adjudicatory procedures upon the "prospect of a material change in workers' terms and conditions of employment." *Id.* The court found it had jurisdiction on the theory that "[e]ither the discontinuation of the [use of biometric information], or the need for the air carriers to agree to higher wages to induce unions to consent, presents more than a bare procedural dispute." *Id.* In the case at bar, however, Plaintiff does not allege that she was part of a union that could have extracted higher wages in exchange for acquiescing to the fingerprinting protocol, much less that a court or adjustment board could have intervened into said bargaining process. To be sure, the *Miller* opinion also opines in dicta that violations of certain BIPA procedures may cause injury in fact. *Id.* at 902–03. But in *Miller*, the plaintiffs alleged that data had been disclosed to third parties, distinguishing the case from this one. See *Miller v. Southwest Airlines Co.*, 2018 WL 4030590, *3 (N.D. Ill. Aug. 23, 2018). Moreover, in *Miller*, the Seventh Circuit only discussed the risk of injury from storing biometric data for longer than authorized under the statute. In the instant case, Plaintiff's complaint only discusses the publicization of retention policies and

*2 n.3 (concluding that plaintiff had standing when biometric data was non-consensually disseminated to third-party vendors); *Dixon v. Washington and Jane Smith Community—Beverly*, 2018 WL 2445292, *9 (N.D. Ill. May 31, 2018) (same); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273–75 (9th Cir. 2019) (holding that nonconsensual collection of biometric identifiers for facial recognition technology constituted injury in fact); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, *8 n.5 (same); see also *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1095 n.7 (N.D. Ill. 2017) (assuming court had jurisdiction when plaintiff alleged unrestricted and nonconsensual collection of biometric data). In other words, those plaintiffs' respective privacy rights were appreciably jeopardized because their biometric data had been collected or shared with third-parties without the plaintiffs' knowledge or consent. But as explained above, Plaintiff knew that her biometric data was being collected and allowed her fingerprint to be taken. See [1-1, ¶ 11]. Moreover, Plaintiff does not assert that Defendant distributed her biometric data to third parties. Thus, Plaintiff has not alleged anything more than a procedural violation of BIPA, which does not confer Article III standing.

Defendant's various arguments to the contrary are unconvincing. Defendant points to Plaintiff's proposed class definition, which includes those whose data was "distributed." [17 at 8 (citing 1-1, ¶ 23).] But Plaintiff has not "[pled] sufficient factual allegations, that plausibly suggest" that her (or anyone else's) data was actually distributed. See *Groshek*, 865 F.3d at 886 (citation omitted). Indeed, the class definition is the only time that the complaint mentions distribution, and Plaintiff does not bring any claims under the subsection of BIPA concerning distribution to third parties, 740 ILCS 14/15(d). This single, opaque reference to a potential concrete injury is not enough to plausibly allege injury in fact. See *Collier*, 889 F.3d at 896.

---

does not allege that data were retained for longer than statutorily authorized. Compare *Miller*, 926 F.3d at 902–03, with [1-1, ¶ 41].

Relatedly, Defendant's citation to the Ninth Circuit's recent decision in *Patel* is inapposite, because the plaintiffs in *Patel*, unlike here, alleged that their biometric data was taken without consent. See *Patel*, 932 F.3d at 1273 ("We conclude that the development of a face template using facial-recognition technology without consent (as alleged here) invades an individual's private affairs and concrete interests."); see also *Patel*, 290 F. Supp. 3d at 955 (distinguishing the *Facebook* litigation from cases where "the plaintiffs indisputably knew that their biometric data would be collected before they accepted the services offered by the businesses involved").

Finally, Plaintiff's conclusory statement that she suffered "risks, harmful conditions, and violations of privacy" is insufficient to plead injury in fact on its own. That single statement is nothing more than rhetoric, as the entirety of the complaint clarifies that the complained of conduct is Defendant's failure to provide or obtain written information. [1-1, ¶¶ 14–18, 41–44.] Indeed, elsewhere in the Complaint, Plaintiff soft-pedals the alleged privacy invasion, explaining that BIPA is little more than an "informed consent" statute, [*id.*, ¶¶ 29, 33], and that the only complained-of violations stemmed from procedural deficiencies in the mutually-consented-to collection of biometric information. See [*id.*, ¶¶41–44]. That is, the only purported "violation of privacy" was the failure to explain *in writing* that biometric data was being collected—something that would have been obvious to any employee subject to a fingerprint or hand-scan. But even if this rhetoric referred to activities that could give rise to concrete injuries, "legal conclusions or bare and conclusory allegations * * * are insufficient" to plead concrete injury and thus confer Article III standing. See *Diedrich*, 839 F.3d at 589.

### B. Costs

Rather unhelpfully, the only references to costs in any of the briefings are simply Plaintiff's formulaic requests for attorneys' fees and other reasonable costs in the respective introductions

10

and conclusions of her briefs. See [15 at 1, 8]; [19 at 1, 3]. Defendant does not even raise a conclusory objection or counterargument. Nonetheless, Defendant would have had the better argument had it bothered to make it.

Section 1447(c) provides that following remand, the district court "*may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. 1447(c) (emphasis added). In general, "if, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007); see also *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (per curiam) (affirming award of fees and costs to plaintiff where there was no objectively reasonable basis for federal jurisdiction or removal); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (affirming award of fees and costs where "[r]emoval was unjustified under settled law."). The decision to award costs and fees rests within the district court's discretion, and § 1447(c) imposes neither a bias in favor of fee awards nor presumption against such awards. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137-39 (2005).

The Court will not award attorneys' fees to Plaintiff. Although there are several district court opinions in line with the Court's analysis, there is no binding authority clearly establishing that violations of BIPA's informational provisions are purely procedural. The only on-point federal appellate case is an out-of-circuit, non-precedential order, which does not clearly establish the law in this district. See *Santana*, 717 Fed. Appx. at *17. While the Seventh Circuit has addressed subject-matter jurisdiction for BIPA violations, it found standing on alternate grounds. *Miller*, 926 F.3d at 902. And, although the Court found *Miller* to be distinguishable from the instant case, that distinction was not clearly established by binding authority. See *id.* at 902–03.

11

Moreover, Defendant's attempts to factually distinguish the case at bar from those that have been remanded are not objectively unreasonable. The complaint suggests, albeit in a conclusory and roundabout fashion, that Defendant "distributed" biometric information. [1-1, ¶ 23.] As discussed above, several courts have concluded that external distribution of biometric information constitutes an injury in fact; Defendant could have believed that Plaintiff had standing based on this allegation. *E.g. Rogers*, 2019 WL 4201570 at *2 n.3. And Defendant has not "tried to have it both ways" by simultaneously asserting that the "distributed" line in the complaint confers subject matter jurisdiction and is too conclusory to survive a 12(b)(6) motion to dismiss. See *Mocek v. Allsaints USA Limited*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016); see also generally [8]. In sum, it was not clearly established at the time of removal that Plaintiffs lacked standing. Accordingly, Plaintiff's request for attorneys' fees is denied.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand [15] is granted, except with regard to attorneys' fees. Because the Court lacks jurisdiction, Defendant's motion to dismiss [8] is denied as moot. The Clerk is directed to remand this case to the Circuit Court of Cook County for further proceedings. Civil case terminated.

Dated: October 17, 2019

_____
Robert M. Dow, Jr.
United States District Judge